In the Matter of the Estate of ISAAC SHIMAN, Deceased.

Surrogate's Court, New York County, April 5, 1927.

Wills — construction — less than one-half of estate was bequeathed to charitable corporation within meaning of Decedent Estate Law, § 17 — rules for determining value of estate stated — legacy to infant is absolute, only time of payment being postponed.

Since decedent's will must be construed as giving less than one-half of the estate to a charitable corporation, within the meaning of section 17 of the Decedent

Estate Law, there is no necessity for any postponement of construction or of a determination of the amount derived by the charitable corporation.

The value of the interest of said corporation is to be computed, not by the actual duration of the life tenant, but by the expectancy of the life tenant under the mortality tables as of the date of decedent's death.

The value of the total estate is to be fixed as of the date of decedent's death and from this is to be deducted the total of the debts only. The value of the difference should then be divided in half and the charitable organization should receive no more than the half so ascertained.

A legacy of $10,000 to an infant is absolute, the time of payment only being postponed.

PROCEEDING involving construction of the will and settlement of executor's account.

——————— ———————, for the plaintiff.

——————— ———————, for the defendant.

FOLEY, S.   The question of construction of the will and the application of section 17 of the Decedent Estate Law, as amended by Laws of 1923, chapter 301, to its provisions will be disposed of as follows:

Under the provisions of that section and the authorities which have interpreted them, I find that less than one-half of the estate has been bequeathed to the Montefiore Home for Chronic Diseases, a charitable corporation. There is no necessity for any postponement of construction, or of the determination of the amount derived by the charitable corporation. The value of its interest is to be computed, not by the actual duration of the life of the life tenant, but by the expectancy of the life tenants, under the mortality tables, as of the date of the death of the decedent. (*Matter of Durand*, 194 N. Y. 477; *Hollis* v. *Drew Theological Seminary*, 95 id. 166.) The decision in *Matter of Seymour* (239 N. Y. 259) and my opinion in *Matter of Blumenthal* (124 Misc. 850; affd., 214 App. Div. 784) are not authorities to the contrary. In these cases, at the time of the submission of the controversy to the court the death of the life tenant had occurred. In the *Blumenthal* case the life tenant lived but for a few days after the decedent.

The value of the total estate of the decedent is to be fixed as of the date of death. From this is to be deducted the total of the debts only. The value of the difference is to be divided in half and the charitable organization is limited to receive no more than the half so ascertained. (*Matter of Seymour*, 239 N. Y. 259; *Matter of Brooklyn Trust Co.*, 179 App. Div. 262. See, also, the comprehensive opinion of Surrogate SCHULZ in *Matter of Arnolt*, 127 Misc. 579.) The method of computation to be followed and the rule that the annuity tables must be resorted to are laid

down in *Hollis* v. *Drew Theological Seminary* (95 N. Y. 166). The court in its opinion said (at p. 179): " The value of the estate in a case like this must be determined at the death of the testator, and that must be ascertained by the help of annuity tables and such other means as are in any case available. There is no present uncertainty in the value thus ascertained for the purpose of sale, purchase or legal administration. The life of the annuitant may turn out to be longer or shorter than the years given in the table used; but that is a future event then unknown, and does not enter into any calculation of present value in such a case."

*Matter of Durand* (194 N. Y. 477), which followed *Hollis* v. *Drew Theological Seminary* (95 id. 166) as a precedent, dealt with a contingent remainder quite similar to the provision of the will involved here. In that case the testator left surviving him a wife and a son. He directed his executors in case of the death of his son without issue to pay over the corpus of the residuary trust to an educational institution. The son died without issue twenty-four years after the testator. The interest of the institution in the remainder was, as in the instant case, contingent. It was held that the expectancy of the life tenants rather than the actual duration of their lives was the proper measure of the value of the remainder. The court in its opinion says (p. 488): " In determining whether the will violated the act of 1860, we must take the amount of the testator's estate as of the date of his death and compute the then present value of the life estates and of the fund ultimately to go to the university. In making this computation, it is proper to compute the value and amount of the life interests under tables based upon the probabilities of life, rather than on the lives as they were actually extended. We doubt that the appellants, upon whom rests the burden of showing the invalidity of testator's disposition, either by findings or by requests to find, have sufficiently presented this question. If, however, we look beyond the findings unto the evidence, it becomes apparent that, computed upon the basis indicated, the provisions in favor of the respondents do not violate the act to which we have referred. (*Hollis* v. *Drew Theological Seminary*, 95 N. Y. 166.) "

Upon the computation submitted in the instant case, therefore, applying these rules, it clearly appears that the total possible payment to the charitable corporation from the residuary estate and the contingent interest in the two trusts after deduction of the value of the life estate would not exceed one-half of the total estate after the deduction of debts. Moreover, the contention that the remainders in both trusts are contingent rather than vested (since the issue of the life tenant might take) is of no

importance in this estate. (*Matter of Durand*, 194 N. Y. 477.) Even if the remainder were vested in the Montefiore Home, under the method of computation outlined by me above, the provisions of section 17 of the Decedent Estate Law, as amended by Laws of 1923, chapter 301, would not be violated.

I hold that the legacy of $10,000 to the infant is absolute. The time of payment only is postponed. The executor may hold that amount until the time indicated in the will. Subject to the deferment of payment, the infant has an absolute right in said fund. If he should die intestate it will pass to his next of kin, or if testate under the provisions of the will. (*Bliven* v. *Seymour*, 88 N. Y. 469, 478; *Quade* v. *Bertsch*, 65 App. Div. 600; affd., 173 N. Y. 615; *Vanderpoel* v. *Loew*, 112 id. 167, 180.)

Submit decree construing the will accordingly, settling the account, and allowing the personal claim of the executor, as proved before the surrogate, in the sum of $13,733.58.