In the Matter of the Estate of BERTHA M. IRISH MIRANDA, Deceased.

Surrogate's Court, Kings County, May 12, 1934.

*Joseph A. Kennedy*, for the petitioner.

*Robert Daru*, for Louis B. Hellman, a creditor.

*John H. Schmid*, special guardian.

*Edward A. Ingraham*, for the Methodist Episcopal Hospital.

*Ernst P. Seelman*, for Evelyn E. I. Furst.

*Walter Jeffries Carlin*, for the Lafayette National Bank, substituted trustee.

WINGATE, S. Testatrix died on January 11, 1933. Her will, after making rather detailed provisions for the payment of her debts, directs the payment of $300 to Evergreen Cemetery for perpetual care of her burial plot, the delivery of four specified articles to the Brooklyn Museum, provided the institution " desires to receive them," and the erection of the balance of the estate into a trust with income payable to her husband and sister and their survivor. The Methodist Episcopal Hospital is the remainderman of this trust.

The husband questions the validity of these directions as a violation of section 17 of the Decedent Estate Law. This enactment, as revised by chapter 229 of the Laws of 1929, which became effective September 1, 1930, added the following to the wording as previously existing: " The validity of a devise or bequest for more than such one-half may be contested only by a surviving husband, wife, child, descendant or parent. When payment of a devise or bequest to such society, association, or corporation or purpose is postponed, in computing the one-half part of such society, association, corporation or purpose, no allowance may be made for such postponement or for any interest or gains which may accrue after the testator's death."

It is the contention of the husband that the meaning of this enactment is that for the purpose of determining whether or not a violation of the inhibition against a gift of more than one-half of the net value of a decedent's property to charity has been made, the property given to the charitable legatee must be taken as being presently worth the sum which will ultimately pass to the legatee although possession be postponed for half a century and others have the benefit of the use thereof in the interval.

The court does not so understand the purpose or effect of the enactment. The note of the Decedent Estate Commission appended to the revised section which is to be taken into consideration in construing the alteration effected (*Matter of Greenberg*, 141 Misc. 874, 882; affd., 236 App. Div. 733; affd., 261 N. Y. 474; *Matter of Mihlman*, 140 Misc. 535, 536, 537; *Matter of Meyer*, 148 id. 901,

902) reads as follows: " It is proposed that only those whose survivorship furnishes the ground for an objection to the will shall have the right to object. Also supersedes the ruling in *Matter of Seymour*, 239 N. Y. 259, that interest shall be added when payment is postponed, and declares the rule in that case that gains shall not be added. The amendment is in accord with the legislative intent that only one-half shall be paid over, *and no more*. The authorities hold that the computation of the one-half payable to the charitable or other corporations named must be computed as of the death of the decedent and upon the same basis as if it had been turned into cash. By the amendment the Commission seeks to continue this rule as to the time of computation but intends to avoid any allowance to the charity by reason of a postponement occasioned by the terms of the will. The statute, it has been held, transforms a residuary gift to the corporation uncertain in amount into a general legacy for a fixed sum. Where a precedent trust has existed, and the income has been applied to the use of the beneficiary, a postponement of payment to the corporation would result under the decision cited, in a charge against the persons, who would be entitled to the other half, of the amount of interest on the postponed legacy to the corporation; interest was allowed under that decision at five per cent, compounded annually. A continuance of the trust for a substantial period of years might largely cut down the one-half share to such other persons, against whom would also be charged any losses incurred during the interim." (Leg. Doc. of 1930, No. 69, p. 113.)

It is obvious from the foregoing that the additions to the statute made no alteration in the method of determining whether or not the particular testator had in fact given more than one-half of his estate to charity. All that was designed or accomplished was a change in the rule enunciated in *Matter of Seymour*, namely, that if an excess had been given by the medium of a postponed payment, the charities shall receive nothing in addition to the half permitted by the statute by reason of the postponement. (*Matter of Apple*, FOLEY, S., 141 Misc. 380, 384, 386; *Matter of McArdle*, HENDERSON, S., 147 id. 876, 881.)

In approaching a determination of the question of whether or not testatrix actually gave in excess of one-half of her estate to charity, it is necessary to pass upon the validity of the individual claim of the executor in the sum of $953.71. This has been established to the satisfaction of the court, and is allowed in this sum.

As shown by the account, the gross estate at the time of the death aggregated $13,102.77 in personalty and an equity in real estate of $447.31, giving a grand total of $13,550.08. The debts,

including that of the executor but excluding the claim of Evelyn Furst, which by stipulation of all parties is to be excluded from this computation, amounted to $1,334.49, leaving a net estate without allowance for funeral or administration expenses of $12,215.59. The operation of the statute results in making void any gift to charity in excess of one-half of this sum, limiting the extent of the possible gift to $6,107.79.

The next question for decision is whether the bequest of $300 for upkeep of burial plot as well as the gift of the trust remainder to the Methodist Episcopal Hospital is to be included in the classification of charitable bequests. This was determined in the affirmative by *Matter of Braasch* (206 App. Div. 96, 101) and in the negative by *Matter of Opdyke* (230 id. 290, 295). The latter decision was modified by the Court of Appeals (255 N. Y. 255), but this did not affect this particular determination. In fact, the result of the decision, when viewed in the light of the terms of the will, leads to the conclusion that a gift for plot upkeep is properly classifiable as a funeral expense under subdivision 3 of section 314 of the Surrogate's Court Act and not as a gift, either charitable or otherwise, and it was so construed by this court in *Matter of Cohen* (150 Misc. 17, 23). (See, also, *Matter of Mawhinney*, 146 Misc. 30, 35; affd., 239 App. Div. 874.)

It follows that the only gift of a charitable nature within the contemplation of section 17 of the Decedent Estate Law is that of the trust remainder to the hospital. Its value as of the date of testatrix's death, determinable by a deduction of the value of the intervening life estates based on mortality tables (*Matter of Smallman*, 141 Misc. 796, 804), is, therefore, decisive of the question of infringement of the statutory limitation. At the time of testatrix's death, the younger of the life tenants was sixty years of age, possessing an expectancy on American Experience Mortality Tables of 9.41474 years, and giving a value for the life estates of $4,600.26. Deducting this sum from the total net estate, leaves a balance of $7,615.33 as the value of the remainder gift to the hospital. As this exceeds one-half of the net estate, it is apparent that the terms of the statute are violated and the gift to the hospital becomes one of $6,107.79. (*Matter of Sloat*, 141 Misc. 710, 712; *Matter of Brown*, 135 id. 611, 613, and cases cited.) Under the amendment to the section, this is payable without addition, at the time designated by the testatrix, which is upon the death of the survivor of the life tenants. The balance of the remainder passes to the husband as intestate property. (*Matter of Mosley*, 138 Misc. 847, 852; *Matter of Sloat*, 141 id. 710, 715; *Matter of Howells*, 146 id. 169, 172.)

In view of the stipulation for settlement of the claim of Evelyn Furst for $750 and the somewhat unusual method of its payment, the net sum which the hospital will ultimately receive will be $5,357.79, the excess of the remainder, whatever it may be at that time, passing to the husband.

The final question relates to the commissions to which the retiring executor is entitled. The terms of the will clearly indicate that the trust is a purely executorial function which would not entitle the fiduciary to dual commissions. (*Matter of Abrahams*, 136 Misc. 538, 545; *Matter of Halbert*, 141 id. 181, 183; *Matter of Lite*, 142 id. 792, 794; *Matter of Quinlan*, 147 id. 483, 484; *Matter of Gregory*, 150 id. 610, 615, 616.) While it has frequently been said that the commissions allowable to a fiduciary who retires before the completion of his full duties are in the discretion of the court (*Matter of Healy*, 138 Misc. 462, 463), the allowance of full commissions has been held to constitute reversible error. (*Matter of Hurley*, 149 Misc. 68, 70.) Under such circumstances, the customary and proper rule is to allow the fiduciary at one-half the statutory rates for all property received, plus an additional one-half on such portions thereof as he has properly expended (*Matter of Healy*, 138 Misc. 462, 464; *Matter of Hurley*, 149 id. 68, 73), and that course will be pursued in the present instance.

Proceed accordingly.