Samuel Fails, S.
With respect to the judicial settlement of the account of the sole surviving executor, objections have been filed to the amount claimed for executor’s commissions by the legal representative of the deceased executor, and also to the amount claimed for counsel fees rendered by the attorneys who formerly represented the executors. A construction is requested also as to a portion of article " fourth ”, hereinafter quoted, in respect to the character of permissible investments by the trustee: " I further authorize my said Trustees to invest and reinvest the principal constituting the corpus of the trust estates herein created from time to time in such securities as they may deem prudent and advisable
Testator died leaving a will dated February 6, 1951. By a decree of this court dated September 10, 1951 letters testamentary and of trusteeship were issued to petitioner and Edward V. McKeown. Upon the death of Edward V. McKeown on December 20, 1951 petitioner continued to act as sole executor. The legal representative of the deceased executor seeks an award of commissions due to the estate of the deceased executor.
Substantially all of the assets of the estate consist of stock in F. R. Tripler & Co., Inc. The executors retained as their attorneys the law firm of which the individual coexecutor was a partner, which had represented such corporation, as well as the testator, prior to his death. The representation of the executors continued until the death of the individual coexecutor on December 8, 1951 and on behalf of the corporate executor until January 8, 1952 when such law firm terminated its representation to avoid any conflict of interest that might arise in connection with its continued representation as attorneys for F. R. Tripler & Co., Inc.
While the estate of a deceased fiduciary is not entitled as a matter of right to an award of commissions, the Surrogate has the discretion to allow the said estate reasonable compensation for any services rendered by the deceased fiduciary beneficial to the estate. (Matter of Bushe, 227 N. Y. 85; Matter of Barker, 230 N. Y. 364; Matter of Battell, 261 App. Div. 120, affd. 286 N. Y. 97.) In the exercise of such discretion the estate of the said Edward V. McKeown will be allowed commissions on all moneys paid and received by him at one half the statutory rate. (Matter of Hurley, 149 Misc. 68; Matter of Healy, 138 Misc. 462.)
With respect to the request by the former attorneys for the executor for an allowance for legal services, the court notes two objections thereto: (1) No compensation should be paid to said attorneys for they represented adverse interests at the same *465 time; (2) Some of the services rendered were executorial in nature. A great portion of the affidavit of services is devoted to work done involving the stock of F. R. Tripler & Co., Inc., owned by the decedent. While it is true that to represent conflicting interests may not always be improper or unlawful, the cases in which this is done are unusual and not entirely free from danger of conflicting duties. (Eisemann v. Hazard, 218 N. Y. 155, and the cases cited therein.) The inevitable conflict was eventually recognized by the voluntary resignation of said attorneys less than four months after the probate of the will, which action the court believes was well taken. There is some authority for the .proposition that, if an attorney represents adverse interests, he is not entitled to compensation from either party. (Field v. Moore, 189 App. Div. 709.) The court is of the opinion that in this instance there was sufficient adversity of interest to raise some question of the propriety of acting simultaneously in the capacity of attorneys for both the company and the estate, especially when the greatest single estate asset was the stock of said company. With respect to the disposition of the stock, mention is made of a stock control agreement and the problems incident thereto, which had been executed by various key men in the company, as well as by the decedent. Another problem covered in the said affidavit primarily involved the Hickey-Freeman Company and the effect of its holdings in the F. R. Tripler & Co., Inc. Many of the services outlined therein impress the court as being legal services rendered primarily on behalf of the company rather than for the estate.
An examination of the affidavit of services further reveals that some of the services rendered were executorial in nature. Executorial services are those which any layman could perform or was capable of performing. (Matter of Hallock, 214 App. Div. 323.) Attorneys’ fees must, therefore, be restricted to compensation for merely legal services. (Matter of Scher, 147 Misc. 791; Matter of Owen, 144 Misc. 688.) Accordingly, therefore, the court, taking into consideration the factors enunciated in Matter of Potts (213 App. Div. 59, affd. 241 N. Y. 593), fixes and determines the fair and reasonable value of the legal services rendered by the former attorneys on behalf of the executors to be $2,000.
The last question for consideration concerns a construction of that portion of article ‘ ‘ fourth ’ ’ hereinabove quoted. A reading of the entire will reflects a clear desire by testator to confer upon his representatives broad powers in handling the trust estate. Specific authorization is given to the trustees to *466 retain the stock of F. R Tripler & Co., Inc. They are authorized “ to exercise any right or option of subscription or otherwise * * * including the right to join in any plan of lease, mortgage, consolidation, exchange, reorganization or foreclosure ”, Decedent’s investment portfolio consists primarily of common stocks and well exceeds the statutory limitation for investing by fiduciaries in common stocks. Such a portfolio is some evidence of testator’s desire not to restrict investments solely to those permitted by statute. (Matter of Dawson, 86 N. Y. S. 2d 365; Matter of Sullivan, 123 N. Y. S. 2d 159; Matter of Wilkes, 172 Misc. 623.) Such words connote freedom of choice rather than restriction in making investments. (Matter of Backus, 175 Misc. 13.) A further question arises as to the meaning of the word “ securities ”. The term “ securities ” may conceivably be interpreted to mean secured obligations. However, the term is commonly used in a broader sense to include unsecured obligations such as debentures and shares of stock. In the opinion of the court, testator intended by the language of the will to identify “ securities ” to include unsecured as well as secured obligations. (Matter of Dawson, supra; Matter of Furbish, 69 N. Y. S. 2d 568.) The trustee, therefore, has the authority to retain the testator’s securities as well as to invest trust funds in securities deemed advisable whether secured or unsecured. This does not, of course, authorize it to use any less care and caution in the selection of investments, but merely gives it broader investment powers.
Settle decree.